U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

SEP 24 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JOSEPH B. PREJEAN | : | DOCKET NO. 06-1709 |
| VS. | : | JUDGE TRIMBLE |
| RADIOLOGY ASSOCIATES OF SOUTHWEST LOUISIANA, INC. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is "Radiology Associates of Southwest Louisiana, Inc.'s Motion for Summary Judgment" (doc. #19) wherein the mover seeks to have this Court render judgment in its favor because the pleadings and exhibits on file demonstrate that there is no genuine issue of material fact for trial.

## FACTUAL STATEMENT

In 1993, Plaintiff, Dr. Joseph B. Prejean joined Diagnostic Radiology Associates ("DRA"). In his second year of practice with DRA, Dr. Prejean became an owner, at which time he became equal with all of the other directors for the corporation in terms of ownership and reimbursement. In 1998, DRA merged with another group of Radiologists to form the entity now known as Radiology Associates. On March 1, 1998, Dr. Prejean entered into a Shareholder Employment Agreement with Radiology Associates.

Dr. Prejean participated regularly in shareholder meetings and had input on hiring and other management decisions. Pursuant to his contract, Dr. Prejean could only be removed by a two-thirds vote of the directors of Radiology Associates. Each shareholder/physician was paid the same fixed

salary plus a bonus.[1]

Certain shareholders of Radiology Associates indicated to other shareholders and to Dr. Gene Lampson, president of the group, that they did not want to continue working with Dr. Prejean. In early September 2002, Dr. Prejean was informed by Dr. Lampson that a two-thirds (2/3) majority of the shareholders would vote him out of the organization if a vote were to be taken, and that he could avoid this only by resigning.[2] On September 17, 2002, Dr. Prejean submitted a letter of resignation to Radiology Associates effective December 31, 2002. Dr. Prejean continued to work for Radiology Associates until December 31, 2002 receiving the same benefits. On December 29, 2003, Dr. Prejean filed the instant lawsuit alleging claims for constructive discharge and violations of Louisiana Revised Statutes 23:332 and 51:2231. On September 14, 2006, Dr. Prejean amended his petition alleging that his termination "was violative of 42 U.S.C. A. § 1981, as amended by the Civil Rights Act of 1991."[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] A fact is "material" if its existence or

---

[1] The parties dispute whether the "bonus" was an equal share of the profits or a discretionary bonus.

[2] The parties dispute whether the shareholders were just talking about a possible vote to remove him or whether an informal vote was taken which resulted in a 2/3 vote for expulsion.

[3] Plaintiff's First Amended Petition, para. 1.

[4] Fed. R.Civ. P. 56(c).

2

nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[11]

## LAW AND ANALYSIS

*State law claims*

Dr. Prejean has filed his state law claims pursuant to Louisiana Revised Statutes 23:332 and 51:2231. Radiology Associates maintains that the Louisiana Employment Discrimination Law[12] is

---

[5] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

[6] *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999).

[7] *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir. 1996).

[8] *Anderson,* 477 U.S. at 249.

[9] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[11] *Anderson,* 477 U.S. at 249-50.

[12] La.R.S. 23:301, *et seq.*

not applicable because Radiology Associates employed less than 20 employees during the relevant time period.[13] Radiology Associates has nine physicians and an officer manager. Dr. Prejean argues that the 12 to 15 employees of Medical Management Professionals ("MMP") should be considered by the Court as employees of Radiology Associates. Dr. Prejean's summary judgment evidence consists of the fact that these individuals performed their billing and management functions in the Radiology Associates' Image Center on Ryan St., and they received an annual monetary Christmas gift from Radiology Associates.

MMP is a corporation which performs billing and certain management functions for Radiology Associates pursuant to an Agreement for Billing and Practice Management Services."[14] Plaintiff argues that MMP employees are employees of Radiology Associates because they are located in Radiology Associates' Image Center. The Agreement provides that MMP will provide billing and collection services, general accounting services and management information services. The Agreement also provides that MMP shall pay its own business office rent, utilities and janitorial services as well as other office related expenses. Finally, the Agreement obligates MMP to pay its employees' salaries, payroll taxes and fringe benefits.

Dr. Gene Lampson testified in his deposition that the Christmas gift or "bonus" by Radiology Associates was to encourage MMP employees to "work (our) accounts more.... We want to stay on their good side. If they work for other people, too, we (Radiology Associates) would want them

---

[13] The Louisiana Employment Discrimination Law, La.R.S. 23:301, *et seq.*, is limited in its application "only to . . . employer[s] who employ[] twenty or more employees." La. R.S. 23:302(2).

[14] Exhibit A-1 attached to Radiology Associations' Memorandum in support of Motion for Summary Judgment.

4

(MMP) to give us a preference."[15] The Court finds that there is no genuine issue of fact for trial and concludes that the employees of MMP are not employees of Radiology Associates.

Radiology Associates further maintains that neither Dr. Prejean, nor the other physicians are employees of Radiology Associates, thus, they cannot be included in the requisite number of employees in order for the Louisiana Employment Discrimination Law[16] to be applicable. Dr. Prejean cites *Clackamas Gastroenterology Associates P.S. v. Wells*,[17] for the factors to consider whether the physicians were employees or not,[18] and argues that the terms and conditions of the Employment Agreement provide that Dr. Prejean was subject to his Employer's control in all major terms and conditions of employment. Dr. Prejean submits as evidence the Shareholder Employment Agreement to establish that he and the other physicians were in fact employees of Radiology Associates.

"The mere fact that a person has a particular title–such as partner, director, or vice president–should not necessarily be used to determine whether he or she is an employee or a

---

[15] Plaintiffs' exhibit 2, Lampson Depo., p. 58, Line 13-17.

[16] La.R.S. 23:301, *et seq.*

[17] 538 U.S. 440, 123 S.Ct. 1673 (2003).

[18] Those factors are:
(1) whether the organization can hire or fire an individual or set rules and regulations of an individual's work, (2) whether and, if so, to what extent the organization supervises an individual's work, (3) whether an individual reports to someone higher in the organization, (4) whether and, if so, to what extent an individual is able to influence the organization, (5) whether the parties intended that the individual be an employee, as expressed in a written agreement or contract, and (6) whether the individual shares in profits, losses and liabilities of the organization. *Id.* at 449-450.

proprietor."[19] The "mere existence of a document styled 'employment agreement' [does not] lead inexorably to the conclusion that either party is an employee."[20] The answer to whether a shareholder-director is an employee depends on "all of the incidents of the relationship ... with no one factor being decisive."[21]

Dr. Prejean argues that the 14 page agreement controls all aspects of his employment which include the following:

(1) Radiology Associates, Employer, employs the physician to provide medical radiology service and the physician accepts said employment.[22]
(2) Dr. Prejean will perform duties assigned to him by the employer.[23]
(3) the employer has the sole right to assign patients and the authority to accept or refuse patients.[24]
(4) Dr. Prejean shall devote his entire working time and attention to employer's business.[25]
(5) money received by the physician from any source shall be the property of the employer.[26]
(6) employer shall pay Dr. Prejean a salary.[27]
(7) employer may award merit bonus.[28]
(8) the Agreement provides details about the consequences of the termination of hospital privileges and includes a typical covenant not to compete.[29]

---

[19] *Clackamas*, 538 U.S. at 450.

[20] *Clackamas*, 538 U.S. at n. 6.

[21] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324, 112 S.Ct. 1344, (1992) (quoting *NLRB v. United Ins. Co. Of America*, 390 U.S. 254, 258, 88 S.Ct. 988 (1968)).

[22] ¶ 1 of the Agreement.

[23] ¶ 3 of the Agreement.

[24] ¶ 3E of the Agreement.

[25] ¶ 6 of the Agreement.

[26] ¶ 7 of the Agreement.

[27] ¶ 9 of the Agreement.

[28] ¶ 9B of the Agreement.

[29] ¶¶ 21 and 22 of the Agreement.

Radiology Associates maintains that Dr. Prejean was not an employee, but an owner/director because he admitted in his deposition that he shared equally in profits and had an equal right to management as each of the other shareholders of Radiology Associates.[30] He was able to and did participate regularly in directors' meeting and had input on hiring and other management decisions.[31] Additionally, Dr. Prejean could not be removed from the group, pursuant to his contract, without a vote of two-thirds (2/3) of the directors of Radiology Associates.[32]

After considering the summary judgment evidence and the arguments of the parties, the Court finds that there is a genuine issue of fact as to whether or not Dr. Prejean was an employee of Radiology Associates. However, considering that we have previously concluded that the employees of MMP are not employees of Radiology Associates, even if the trier of fact were to find that Dr. Prejean and/or the other physicians were employees, Louisiana's Employment Discrimination Law applies only to employers with twenty or more employees. Radiology Associates, employs at most, ten (10) employees and cannot be subject to Louisiana's anti-discrimination laws.

Radiology Associates maintains that Plaintiff's state law claims have prescribed. In *Eastin v. Entergy Corp.*,[33] the court held that the prescriptive period in any employment discrimination case runs from "the earlier of the date the employee is informed of his termination or his actual separation

---

[30] Radiology Associates exhibit B, Prejean depo. p. 44, line 11 - p. 45, line 1.

[31] *Id.* P. 24, lines 2-6, p. 33, lines 23-24, p. 112, line 17, p. 113, line 4.

[32] Radiology Associates exhibit A-2, p. 7, ¶ 20.

[33] 865 So.2d 49, 54 (La.2004).

from employment.[34] Dr. Prejean sent a letter dated September 17, 2002 to Radiology Associates announcing his resignation as of December 31, 2002. Dr. Prejean continued to work until December 31, 2002. Dr. Prejean filed the instant law suit on December 29, 2003, more than one year from the date of the letter.

Dr. Prejean argues that *Eastin* should not be applied retroactively because it overruled clear past precedent existing in the Third Circuit. Dr. Prejean cites *Lovell v. Lovell*,[35] and argues that *Eastin* should not be applied because it decided a new principle of law. We disagree. *Eastin* did not formulate a new principle of law, but instead relied on two United States Supreme Court Cases,[36] Louisiana Civil Code article 3492 and a Third Circuit[37] case to find that the one-year prescriptive period barred plaintiff's claims and further opined that the First and Third Circuit cases[38] were erroneous. Accordingly, the Court finds that there is no genuine issue of material fact that Dr. Prejean's state law claims which were filed beyond the prescriptive period have prescribed.

Because the Court finds that the state law claims have prescribed and that the Louisiana Employment Discrimination Law does not apply, the Court will not address further the state law claims in regards to whether or not Dr. Prejean was constructively discharged.

*28 U.S.C.A. § 1981 claim*

---

[34] *Id.* 865 So.2d at 54.

[35] 378 So.2d 418 (La.1979).

[36] *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498 (1980).

[37] *Winbush v. Normal Life of Louisiana*, 599 So.2d 489, 491 (La.App. 3 Cir. 1992).

[38] *Harris v. Home Sav. and Loan Ass'n*, 663 So.2d 92 (La.App. 3rd Cir. 1995); *Brunett v. Department of Wildlife and Fisheries*, 685 So.2d 618 (La.App. 1 Cir. 1996).

Dr. Prejean asserts that Radiology Associates discriminated against him because of his race pursuant to 42 U.S.C.A. § 1981.[39] Dr. Prejean maintains that this law was violated when Radiology Associates constructively discharged him which he argues was at least partially motivated by race. Dr. Prejean complains that the director-shareholders chose to terminate his employment by vote, but these same director-shareholders allowed another director-shareholder, Dr. Knox, to remain; Dr. Knox is white and Dr. Prejean is black. Radiology Associates maintains that Dr. Prejean was not constructively discharged, but of his own volition, chose to terminate his employment with Radiology Associates. Radiology Associates further maintains that it did not discriminate against Dr. Prejean because of his race.

The standard of proof for Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e, *et seq.* also applies to § 1981 claims.[40] The inquiry set before the Court is whether

---

[39] § 1981 provides the following:
**(a) Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) "Make and enforce contracts" defined**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c) protection against impairment**

The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law.

[40] *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 403 n.2 (5th Cir. 1999).

Radiology Associates "intentionally discriminated against the plaintiff."[41] The evidentiary framework for analysis of Title VII disparate treatment claims was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[42] In order to overcome a motion for summary judgment on a Title VII discrimination claim, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[43]

When a plaintiff in a discriminatory discharge case does not have direct evidence of discriminatory motive, the plaintiff must initially prove that (1) he is a member of a protected group; (2) he was qualified for the job that he held; (3) he was discharged, constructively or otherwise; and (4) after his discharge, others who were not in the protected class remained in similar positions.[44] The *primae facie* case of discrimination, once established, raises an inference of intentional discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.[45] The defendant's burden is satisfied by producing evidence, which "taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action."[46] The burden then shifts back to the plaintiff to establish pretext and the

---

[41] *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003).

[42] 411 U.S. 792 (1973).

[43] *Id.* at 802-04; *Manning v. Chevron Chemical Co.*, 332 F.3d 874 (5th Cir. 2003); *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000); *Shackleford v. Dloitte & Touche*, 190 F.3d 398, 404 (5th Cir. 1999).

[44] *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990); *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 888 (W.D. La. 2003).

[45] *McDonnell Douglas*, 411 U.S. at 802.

[46] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).

ultimate question of whether the defendant intentionally discriminated against plaintiff.[47] A plaintiff may either, (1) substantiate her claim of pretext by demonstrating that discrimination lay at the heart of the employer's decision,[48] or (2) submit sufficient evidence to conclude that race was a "motivating factor" for the employer's decision.[49] The ultimate burden of proving intentional discrimination, however, still rests at all times with the plaintiff.[50]

Radiology Associates maintains that Dr. Prejean cannot satisfy this initial burden because he was not constructively discharged. To prove constructive discharge, Dr. Prejean must prove that "his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign."[51] Conclusory allegations of discrimination are insufficient to support a claim for constructive discharge.[52] The basis for Dr. Prejean's allegation of constructive discharge is that he was allegedly forced to terminate his employment because if a vote were to be taken by the director-shareholders, there were enough votes (2/3 majority) to expel him from the group. Even though a vote never occurred, Dr. Gene Lampson testified that he told Dr. Prejean that if it were to come to a vote, "it might go against him (Dr. Prejean).[53] Dr. Lampson also told Dr. Prejean that "Joe,

---

[47] *Haynes v. Pennzoil Co.*, 207 F.3d at 300.

[48] *Rubenstein v. Adm'rs. of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000).

[49] *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 2155 (2003).

[50] *Hicks*, 509 U.S. at 507.

[51] *Ugalde v. McKenzie Asphalt, Co.*, 990 F.2d 239, 242 (5th Cir. 1993).

[52] *Ugalde*, 990 F.2d at 243.

[53] Lampson depo. p. 10, line 6.

11

if you don't want this to happen, the only way to avoid it is to resign."[54] Radiology Associates argues that this is not constructive discharge because a vote never occurred. We disagree. In *Guthrie v. J.C. Penney Co., Inc.*,[55] the jury found that a resignation could be considered a constructive discharge when "termination was inevitable." Dr. Prejean has presented genuine issues of material fact for trial as to whether or not he was constructively discharged.

Radiology Associates maintains that Dr. Prejean cannot establish a *prima facie* case because Dr. Prejean and Dr. Knox were not similarly situated. Dr. Lampson's testimony establishes that Dr. Prejean and Dr. Knox were often at odds with Dr. Thomas and Dr. Brdlik during board meetings, and that it seemed there was a power struggle between the doctors.[56] Dr. Lampson's testimony reveals that Dr. Thomas and Dr. Brdlik threatened to resign because of the frequent conflicts between the two sides.[57] The doctors informed Dr. Lampson, that either Dr. Prejean and Dr. Knox needed to leave, or they would leave the group. In an attempt to keep the group of radiologists together, Dr. Lampson met with Drs. Thomas and Brdlik. Drs. Thomas and Brdlik agreed to reconsider staying with the group, but only if Dr. Prejean left.

Dr. Prejean maintains that he and Dr. Knox were similarly situated because they were often on the same side of the internal disputes with Drs. Thomas and Brdlik. Radiology Associates argues that Dr. Knox and Dr. Prejean were not similarly situated because Dr. Prejean was the source of several complaints which were unrelated to and did not involve Dr. Knox. In his affidavit, Dr.

---

[54] *Id.* p. 63, lines 21-23.

[55] 803 F.2d 202, 207 (5th Cir. 1986).

[56] Lampson depo. p. 14, line 3-21.

[57] *Id.* pp. 12-14.

Lampson states that he received complaints about Dr. Prejean that were "related to his work ethic and professionalism,"[58] in that he (Dr. Prejean) "did not read MRIs efficiently and he had a rough manner with clients and patients."[59] Dr. Lampson also received complaints in the form of letters from clients of Radiology Associates that indicated that Dr. Prejean was rude to these clients and that "this was not the first time either of these particular clients had similar problems with Dr. Prejean."[60] Dr. Lampson also attested to the fact that there were other verbal complaints regarding Dr. Prejeans' manner of dealing with clients and patients, and that "several shareholder-directors [believed] that Radiology Associates lost a contract with a local hospital because of Dr. Prejean's attitude towards the hospital personnel and patients."[61]

Dr. Prejean has not submitted any summary judgment evidence to show that Dr. Knox was in a similar situation. Through summary judgment evidence, Radiology Associates has shown that the shareholder-directors[62] had a history with Dr. Prejean unlike that with Dr. Knox. Dr. Prejean has failed to submit summary judgment evidence to create a genuine of issue of fact for trial to establish that he and Dr. Knox were similarly situated.

Even if the Court were to have found that Dr. Prejean was similarly situated with Dr. Knox and that disparate treatment had occurred raising an inference of intentional discrimination, Radiology Associates has articulated a legitimate, non-discriminatory reason for its actions. Dr.

---

[58] Defendant's exhibit A, ¶ 9.

[59] *Id.*

[60] *Id;* Exhibits A-3 and A-4 attached to Lampson Affidavit.

[61] *Id.* ¶ 11.

[62] These shareholders informally decided to vote Dr. Prejean out of the group, but decided to allow Dr. Knox to stay in order to keep the rest of the group together.

Prejean was often at odds with Drs. Thomas and Brdlk at meetings. The director-shareholders shared concerns about Dr. Prejean's conduct and behavior toward Radiology Associates' clients and/or patients and the loss of a hospital client because of Dr. Prejean's rude behavior.

Finally, Dr. Prejean has submitted no evidence that the group's informal vote to terminate their relationship with Dr. Prejean was racially motivated or that it was pretextual. Dr. Prejean relies on three alleged incidents (1) Dr. Brdlik's statement that he did not like Dr. Prejean "from the first time [he] saw him,"[63] (2) Dr. Thomas' statement that Dr. Prejean "has it a lot easier being born now than if he was born 100 years ago,"[64] and (3) Radiology Associates' failure to hire two black radiologists.[65]

These stray remarks do not support an inference that race was a motivating factor in Radiology Associates' conduct. The single allegation that Radiology Associates failed to hire two black radiologists does not support Dr. Prejeans' allegation of racial discrimination especially given the fact that Radiology Associates hired Dr. Prejean who is black. Accordingly, the Court finds that Dr. Prejean has not established a *prima facie* case of race discrimination and even if he had met that burden, Radiology Associates has met their burden of proving non-discriminatory reasons for the constructive discharge. Finally, the Court concludes that Dr. Prejean has failed to establish that the non-discriminatory reasons for the constructive discharge were pretextual or that race discrimination lay at the heart of Radiology Associates' conduct.

## CONCLUSION

---

[63] Defendant's Exhibit B, Prejean depo. p. 93, lines 2-5.

[64] *Id.* p. 139, lines 22, p. 140, line1.

[65] *Id.* p. 174, lines 2-6.

14

For the reasons set forth above, the motion for summary judgment will be granted, dismissing with prejudice Dr. Prejean's state law claims and § 1981 claims against Radiology Associates, Inc.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 24th day of September, 2008.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE